# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:16-cv-00173-RJC

| | |
|---|---|
| CHRISTOPHER B. JULIAN and RENEE JULIAN, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | **ORDER** |
| BANK OF AMERICA, N.A., et al., ) ) | |
| Defendants. ) | |

**THIS MATTER** comes before the Court on twelve motions to dismiss filed by the numerous defendants in this case: Capital One, N.A.'s Motion to Dismiss, (Doc. No. 7); Judge Martin F. Clark, Jr. and Judge Edwin A. Gendron, Jr.'s Motion to Dismiss, (Doc. No. 14); Fitch Group Global HQ, McGraw Hill Financial, and Moody's Investors Service, Inc.'s (collectively, the "Rating Agencies") Motion to Dismiss, (Doc. No. 30); J.P. Morgan Chase's Motion to Dismiss, (Doc. No. 53); Wells Fargo Bank, N.A.'s Motion to Dismiss, (Doc. No. 55); Goldman, Sachs & Co. LLC and Morgan Stanley & Co. LLC's Motion to Dismiss, (Doc. No. 57); Bank of America, N.A.'s Motion to Dismiss, (Doc. No. 59); HSBC Bank USA, N.A.'s Motion to Dismiss, (Doc. No. 60); Barclays Bank PLC's Motion to Dismiss, (Doc. No. 61); Ally Financial Inc.'s Motion to Dismiss, (Doc. No. 63); Citigroup, N.A.'s Motion to Dismiss, (Doc. No. 65); G.E. Capital Bank's Motion to Dismiss, (Doc. No. 77); and all the related pleadings (collectively, the "Motions to Dismiss").

The Court issued a Roseboro on November 15, 2016, directing Plaintiff's to respond to the then filed motions to dismiss, (Doc. Nos. 7, 14, 30), by December 1, 2016 and to all subsequent

motions to dismiss within seventeen days of those motions being filed. (Doc. No. 41). Plaintiffs filed responses in opposition to Capital One, N.A.'s Motion to Dismiss, Judge Gendron and Judge Clark's Motion to Dismiss, and the Ratings Agencies' Motion to Dismiss, but failed to respond to any of the other motions to dismiss. (Doc. Nos. 73–74, 80). The Motions to Dismiss are ripe for adjudication.

I. **BACKGROUND**

Pro se Plaintiffs Christopher B. Julian and Renee G. Julian (collectively, "Plaintiffs") essentially allege a massive conspiracy and fraud against eighteen defendants, including many of the largest U.S. financial institutions, several financial ratings agencies, and two state court judges. According to Plaintiffs, Defendants either conducted or enabled negligent and fraudulent lending practices in sub-prime loans and fraudulently packaged, securitized, and rated those loans. (Doc. No. 1 at ¶ 1) (hereinafter, "Compl."). Plaintiffs assert that due to Defendants' role in "the Financial meltdown of Financial Markets in an [sic] around 2008 . . . Plaintiffs [and other credit-worthy borrowers] were and are denied equity leverage, which prior to the financial meltdown would not, and did not occur, and which today is not appropriately warranted although has become law significantly if not completely eliminating non-qualifying stated income lending." (Id. at ¶¶ 3, 6). In short, Plaintiffs assert that Defendants, at a minimum, played a role in bringing about the sub-prime lending crisis, leading to stricter financial regulations, specifically the Dodd Frank Act, which in turn deprived Plaintiffs of the ability to secure a loan or other mortgage financing, all of which resulted in grave injury to Plaintiffs. See (id. at ¶¶ 76–82).

Plaintiffs conclude their complaint by asserting two counts against defendants. Against the "financial institutions," Plaintiffs allege a count of negligence. (Id. at 44–48). Against Judge

Gendron and Judge Clark, Plaintiffs allege civil rights violations in violation of 42 U.S.C. § 1983. (Id. 49–51).

Notably, this is Plaintiffs' third lawsuit of a similar nature. In 2012, Plaintiffs sued various agencies and employees of the federal government and the Commonwealth of Virginia after Plaintiffs' application for a farm ownership loan through the U.S. Department of Agriculture ("USDA") was denied. (Compl. at ¶ 49). Judge Kiser in the Western District of Virginia dismissed Plaintiffs claims. (Id. at ¶¶ 49–52). The Fourth Circuit affirmed and the U.S. Supreme Court denied certiorari. Julian v. Dep't of Agric., 135 S. Ct. 1901 (2015); (Compl. at ¶¶ 59, 67). Then, in 2016, Plaintiffs effectively attempted to appeal the earlier decisions by suing the USDA, Western District of Virginia, and the Fourth Circuit Court of Appeals in the Court of Federal Claims. Julian v. United States, 2016 WL 929219 (Fed. Cl. Mar. 10, 2016), aff'd, 2016 WL 4137676 (Fed. Cir. Aug. 4, 2016); (Compl. at ¶ 73). The Court of Federal Claims dismissed Plaintiffs' lawsuit because, among other things, it did not have jurisdiction to review another court's filings. Julian v. United States, 2016 WL 929219, at *2. Now, Plaintiffs seek an alternate litigation route in an attempt to be compensated for their financial losses. This is plaintiffs' third strike; their claims are dismissed.

## II. STANDARD OF REVIEW

### a. Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss under Rule 12(b)(1) seeks to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The existence of subject matter jurisdiction is a threshold issue the court must address before considering the merits of the case. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir.1999). "The subject matter jurisdiction of federal courts is limited and the federal courts may exercise only that jurisdiction which Congress

has prescribed." Chris v. Tenet, 221 F.3d 648, 655 (4th Cir. 2000) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)). Subject matter jurisdiction is so limited that federal "[c]ourts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010) (internal citations omitted). "No party can waive the defect, or consent to [subject matter] jurisdiction. No court can ignore the defect; rather a court, noticing the defect, must raise the matter on its own." Wisconsin Dep't of Corr. v. Schacht, 524 U.S. 381, 389 (1998) (internal citations omitted).

    b. Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(2)

Under Rule 12(b)(2), Plaintiffs bear the burden of setting forth facts sufficient to demonstrate personal jurisdiction. See Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 59–60 (4th Cir. 1993). Although the plaintiff need only prove a prima facie case of personal jurisdiction, he can't rely on conclusory statements or bare allegations—he must allege "specific acts connecting [the] defendant with the forum." Second Amend. Found. V. U.S. Conf. of Mayors, 274 F.3d 521, 524 (D.C. Cir. 2001) (internal quotation marks omitted); Akzo, 2 F.3d at 59–60. "A federal district court may only exercise personal jurisdiction over a foreign [resident] if such jurisdiction is authorized by the long-arm statute of the state in which it sits and application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment." Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 277 (4th Cir. 2009). In deciding whether plaintiff has proved a prima facie case of personal jurisdiction, the court must draw all reasonable inferences arising from the proof, and resolve all factual disputes in plaintiff's favor. Akzo, 2 F.3d at 59–60.

    c. Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

The standard of review for a motion to dismiss under 12(b)(6) for failure to state a claim is well known. Fed. R. Civ. P. 12(b)(6). It tests the "legal sufficiency of the complaint" but "does

not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts "to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Facial plausibility means allegations that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 550 U.S. at 545 (quoting Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 775 (1984)). Additionally, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (quoting Twombly, 550 U.S. at 555–56). Nonetheless, a court is not bound to accept as true legal conclusions couched as factual allegations. Papasan v. Allain, 478 U.S. 265, 286 (1986). Courts cannot weigh the facts or assess the evidence at this stage, but a complaint entirely devoid of any facts supporting a given claim cannot proceed. Potomac Conference Corp. of Seventh-Day Adventists v. Takoma Acad. Alumni Ass'n, Inc., 2 F. Supp. 3d 758, 767–68 (D. Md. 2014). Furthermore, the court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

## III. DISCUSSION

Plaintiffs tell a disheartening tale of the hardship they suffered as a result of the Great Recession and the sub-prime lending crisis. But Plaintiffs' two claims—negligence and an alleged federal civil rights violation—both fail on jurisdictional grounds. Notwithstanding the 53-page complaint and twelve motions to dismiss, this case is quite simple. There is no diversity between Plaintiffs and Defendants depriving this Court of jurisdiction over Plaintiffs' negligence claim. Additionally, the Plaintiffs' lack standing because Plaintiffs' injury is not fairly traceable to Defendants' alleged conduct. Finally, Plaintiffs' civil rights claim is asserted solely against judges for acts done in their official capacity thus entitling them to the protection of sovereign immunity and causing Plaintiffs' claim to be lacking in subject-matter jurisdiction.

a. Diversity Jurisdiction Under 28 U.S.C. § 1332

28 U.S.C. § 1332(a)(1) provides that "district courts shall have original jurisdiction of all civil action where the matter in controversy exceed the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states . . . ." Simply put, the litigation here is not between citizens of different states—thus Plaintiffs' negligence claim fails entirely. Based on the pleadings, Plaintiff Christopher Julian is a resident of North Carolina and Plaintiff Renee Julian was a resident of Virginia at the time this suit began, but now is a resident of North Carolina. (Compl. at ¶ 74; Doc. No. 74 at 18–19). Meanwhile, Bank of America, N.A.'s principal place of business is North Carolina,[1] (Compl. at ¶ 15; Doc. No. 62 at 8), and Capital One, N.A.'s principal place of business is Virginia, (Compl. at ¶ 25; Doc. No. 8 at 7). Both of these defendants defeat diversity jurisdiction. Because complete diversity is lacking, full dismissal of the complaint is

---

[1] Section 1332 provides that "a corporation shall be deemed to be a citizen of every State by which it has been incorporated and of the State . . . where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

appropriate. See Exxon Mobil Corp. v. Allapattah Services, 545 U.S. 546, 553 (2005) ("In a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action.") (citations omitted).

    b. Standing

Several defendants also assert that Plaintiffs' lack standing, and therefore the Complaint should be dismissed because of a lack of subject-matter jurisdiction. See U.S. ex rel. Saidiani v. NextCare, Inc., No. 3:11cv141, 2014 WL 4672417, at *2 (W.D.N.C. Sept. 18, 2014) ("Where a plaintiff lacks standing, the suit must be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1)."). The Court agrees.

The constitutional standard for standing requires a plaintiff to show three things: "(1) he has suffered an injury in fact; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends for Ferrell Parkway, LLC v. Stasko, 282 F.3d 315, 320 (4th Cir. 2002). Plaintiffs have not satisfied the second prong because they have failed to plead the necessary factual allegations to show that "it is more likely the plaintiff's injury was caused by the challenged conduct of the defendant, and not by the independent actions of third parties not before the court." Id.; see Bishop v. Bartlett, 575 F.3d 419, 424 (4th Cir. 2009). As other courts have found before, this Court concludes that the causal connection between the activity of lenders and banks and the recession is far too tenuous to establish standing in cases such as this. See, e.g., Larobrina v. Wells Fargo Bank, N.A., No. 3:10CV1279 MRK, 2012 WL 1032953, at *3 (D. Conn. Mar. 27, 2012); Wells Fargo Bank, N.A. v. Ash Org., No. CV-09-188-MO, 2009 WL 4884467, at

*6 (D. Or. Dec. 8, 2009) (commenting that "the causes of the recession are so numerous" that losses can't be attributed to a single bank's lending practices).

   c. Judicial Immunity

It is well-established that judges are entitled to absolute judicial immunity. Judicial immunity protects judges not just from damages being assessed against them, but from suit itself. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Indeed, the Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation," making it especially apt for resolution on a motion to dismiss or motion for summary judgment. Hunter v. Bryant, 502, U.S. 224, 227 (1991) (per curiam); see Mireles v. Waco, 502 U.S. 9, 11 (1991); Imbler v. Pachtam, 424 U.S. 409, 419 n.13 (1976) ("[A]bsolute immunity defeats a suit at the outset.").

"[J]udicial immunity is not overcome by allegations of bad faith or malice." Mireles, 502 U.S. at 11. Judicial immunity can only be overcome in two situations: (1) non-judicial actions; and (2) the absence of all jurisdiction. Id. at 11–12. An act by a judge is judicial when it is "normally performed by a judge and . . . the parties dealt with the judge in his judicial capacity." King v. Myers, 973 F.2d 354, 357 (4th Cir. 1992).

Here, Plaintiffs have not alleged either exception to judicial immunity. Plaintiffs allege that Judge Gendron and Judge Clark issued orders adverse to Plaintiffs and deprived Plaintiffs of a trial by jury. See (Compl. at ¶¶ 57–64). Specifically, Plaintiffs complain about an order Judge Gendron entered after a hearing Plaintiffs did not attend and an order Judge Clark entered denying Plaintiffs' motion to proceed with their appeal in forma pauperis. (Id. ¶¶ 62, 64, 106). Even taking these allegations as true, the actions alleged against Judges Gendron and Clark are clearly judicial actions done in the Judges' official capacities. Indeed, Plaintiffs' Complaint and Response in

Opposition to the Judicial Defendants' Motion to Dismiss rings more of an appellate brief than a new civil action. While Plaintiffs' may be dissatisfied with the judges' rulings, a civil rights lawsuit in this Court is not the proper remedy. Accordingly, Plaintiffs' § 1983 claim, asserted against only Judges Gendron and Clark, will be dismissed without prejudice due to a lack of jurisdiction.

    d. <u>Personal Jurisdiction; Statute of Limitations; and Failure to State a Claim</u>

Defendants also contend that the Court lacks personal jurisdiction over many of the Defendants, the statute of limitations on Plaintiffs' negligence claim has expired, and Plaintiffs fail to state a claim under 12(b)(6). Though these arguments appear convincing and equally capable of resolving the case at hand, the Court need not address them because the case can be resolved on subject-matter jurisdiction grounds alone.

    e. <u>Request for Leave to Amend Complaint</u>

Although Plaintiffs' have not properly moved the Court to allow leave to amend their Complaint, they do conditionally request the Court's leave to amend in their various oppositions to Defendants' motions to dismiss. (Doc. Nos. 73 at 34; 74 at 23; 80 at 27). In other words, they ask the Court to grant leave to amend only if their Complaint "failed to sate a claim upon which relief may be granted under any particular theory." In and of itself, the procedural deficiencies in this request subject it to denial. Nonetheless, in light of Plaintiffs' pro se status, the Court will briefly address Plaintiffs' request.

Rule 15 of the Federal Rules of Civil Procedure allows a party to amend once as a matter of course within twenty-one days after serving, or "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other

cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Plaintiffs have not filed an amended complaint and 21 days have passed since each of the motions to dismiss were filed, therefore, Plaintiffs require the leave of the Court to amend their Complaint.[2]

"[T]he grant or denial of an opportunity to amend is within the discretion of the District Court." Pittston Co. v. United States, 199 F.3d 694, 705 (4th Cir. 1999) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). There are three grounds for denying a request to amend a complaint: prejudice, bad faith, and futility. Equal Rights Ctr. v. Niles Bolton Assocs., 602 F.3d 597, 603 (4th Cir. 2010) ("A district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile.").

Here, Plaintiffs' claims could not survive the subsequent motions to dismiss even if they amended their complaint and therefore an amendment would be futile. See Perkins v. United States, 55 F.3d 910, 917 (4th Cir. 1995); Woods v. Boeing Co., 841 F. Supp. 2d 925, 930 (D.S.C. 2012) (citation omitted) ("If an amendment would fail to withstand a motion to dismiss, it is futile."). Plaintiffs certainly could remedy their diversity jurisdiction issues through an amended complaint by removing several of the current defendants, but Plaintiffs can't wholly eliminate the deficiencies in their Complaint, and thus, any amendment would be futile. Specifically, it would be impossible for Plaintiffs to correct via an amended complaint the standing and statute of

---

[2] Plaintiffs responses to the first three motions to dismiss, wherein Plaintiffs requested leave to amend their Complaint as an alternate remedy if the Court was inclined to grant the motions to dismiss, were filed before 21 days had passed regarding the two most recent motions to dismiss. (Doc. Nos. 65, 77). Nevertheless, Plaintiffs did not need leave to file an amended complaint at that time and failed to do so. Additionally, Plaintiffs did not respond within 21 days to any of the motions to dismiss seeking to amend in response to that specific motion to dismiss. Accordingly, leave of the Court became necessary.

limitations issues,[3] as well as the personal jurisdiction issues as they relate to Judges Gendron and Clark. Further, it seems highly unlikely that Plaintiffs could remedy the personal jurisdiction issues related to the financial defendants. For these reasons, an amended complaint would be futile and would only waste significant additional resources from the numerous defendants.

IV. **CONCLUSION**

**IT IS, THEREFORE, ORDERED** that:

1. Capital One, N.A.'s Motion to Dismiss, (Doc. No. 7), is **GRANTED**;

2. Judge Martin F. Clark, Jr. and Judge Edwin A. Gendron, Jr. Motion to Dismiss, (Doc. No. 14), is **GRANTED**;

3. Fitch Group Global HQ, McGraw Hill Financial, Moody's Investors Service, Inc.'s (collectively, the "Rating Agencies") Motion to Dismiss, (Doc. No. 30), is **GRANTED**;

---

[3] As mentioned above, this Court will not address the statute of limitations arguments in-depth because the case can be resolved on jurisdictional grounds. In summary though, Defendants argue that Plaintiffs' negligence claim is time-barred under both the Virginia two-year statute of limitations and North Carolina three-year statute of limitations. See, e.g., (Doc. No. 8 at 7–8). Plaintiffs counter that equitable tolling and the discovery rule should extend the statute of limitations in this case. (Doc. No. 73 at 16–21). It is well established that the discovery rule would not apply to negligence claims of this nature. See Trana Discovery, Inc. v. S. Research Inst., No. 5:13-cv-848-F, 2014 WL 5460611 (E.D.N.C. Oct. 27, 2014); Andersson Gustafsson Advokatbyra KB v. eSCRUB Sys., Inc., No. 1:10-cv-632, 2011 WL 3954878, at *2 (E.D. Va. Sept. 7, 2011); Birtha v. Stonemor, North Carolina, LLC, 727 S.E.2d 1, 7 (N.C. Ct. App. 2012). Further, no extraordinary circumstances appear that would justify application of equitable tolling. See Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000) ("[A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where-due to circumstances external to the party's own conduct-it would be unconscionable to enforce the limitation period against the party and gross injustice would result.").

4. J.P. Morgan Chase's Motion to Dismiss, (Doc. No. 53), is **GRANTED**;

5. Wells Fargo Bank, N.A.'s Motion to Dismiss, (Doc. No. 55), is **GRANTED**;

6. Goldman, Sachs & Co. LLC and Morgan Stanley & Co. LLC's Motion to Dismiss, (Doc. No. 57), is **GRANTED**;

7. Bank of America, N.A.'s Motion to Dismiss, (Doc. No. 59), is **GRANTED**;

8. HSBC Bank USA, N.A.'s Motion to Dismiss, (Doc. No. 60), is **GRANTED**;

9. Barclays Bank PLC's Motion to Dismiss, (Doc. No. 61), is **GRANTED**;

10. Ally Financial Inc.'s Motion to Dismiss, (Doc. No. 63), is **GRANTED**;

11. Citigroup, N.A.'s Motion to Dismiss, (Doc. No. 65), is **GRANTED**;

12. G.E. Capital Bank's Motion to Dismiss, (Doc. No. 77), is **GRANTED**;

13. Plaintiffs' Complaint, (Doc. No. 1), is **DISMISSED without prejudice**;

14. Plaintiffs' Motion to Enter into Evidence a Request of Waiver of Service, (Doc. No. 48), is **DISMISSED as moot**; and

15. The Clerk of Court is directed to close this case.

Signed: September 8, 2017

Robert J. Conrad, Jr.
United States District Judge